## The People v. Michael Reilly.

*Constitutional law—Jury commission—Suspended sentences.*

1. Jury commissioners *appointed* by the Governor under How. Stat. §§ 7623-30, are not judicial officers in the sense of the constitutional requirement (Art. xv, § 14) that "judicial officers of cities and villages shall be *elected;*" and they are not county appointees.

2. Choosing jurymen is a matter of statutory regulation ; and any mode of choosing them is constitutional that obtains good and lawful men of defendant's vicinage from the body of the county.

3. Suspending sentence for a reasonable time is discretionary with the judge if good cause is shown for doing so; but an indefinite suspension lasting for about nine months is unreasonable though it is not necessarily ground for setting aside the conviction.

Exceptions before judgment from the Recorder's Court of Detroit. (Swift, J.) January 29.—April 9.

Information for robbery. Conviction affirmed.

*John G. Hawley*, for appellant, as to suspended sentences, cited *Com. v. Dowdican's Bail* 115 Mass. 136 ; *State v. Addy* 14 Vroom 115 ; *People v. Morrisette* 20 How. Pr. 118.

Attorney General *Jacob J. Van Riper* and *George F. Robison* for the People. The constitutionality of a law under which de facto officers act cannot be attacked in a collateral proceeding : *Wayne County Auditors v. Benoit* 20 Mich. 176 ; *Carleton v. People* 10 Mich. 250 ; *Ex parte Corrigan* 37 Mich. 66 ; jurors are not municipal officers : *Shurbun v. Hooper* 40 Mich. 503 ; *Underwood v. McDuffee* 15 Mich. 361.

Sherwood, J. The respondent was convicted in the Recorder's Court in the city of Detroit, of the crime of robbery, on the twenty-second day of October, 1881. Motion was afterwards made by respondent for a new trial, and he was admitted to bail upon his own recognizance in the sum of $500, and sentence was indefinitely suspended by the

court. The motion for new trial was denied. About seven months after he was admitted to bail he was arrested on another charge, but was not tried, and about a month thereafter he was brought before the Recorder and sentenced to imprisonment for five years.

After the jury had been called and before they were sworn, respondent's counsel challenged the array upon the ground that they were selected by persons appointed by the Governor of the State, and not by persons chosen by the vote of the people of the city of Detroit or the county of Wayne, and that the act of the Legislature under which the Governor appointed said persons to act as jury commissioners is unconstitutional and void. The challenge was overruled by the court, and counsel excepted.

The constitutional provision referred to in defendant's objection is as follows: " Judicial officers of cities and villages shall be *elected*, and all other officers shall be *elected* or *appointed*, at such time and in such manner as the legislature may direct." Const. art. xv, § 14. It is claimed that by the *appointment* of these commissioners to make return of jurors the Constitution has been infringed. We have examined the record and briefs in this case carefully, and are unable to see in what manner the constitutional rights of the respondent have been violated. The commissioners appointed by the Governor are not judicial officers in the sense in which those words are used in this section, and if they were they are not city or village officers, but county appointees, and are, therefore, not within the provisions of the section referred to. The defendant, under the operation of the law, is in no way deprived of his common-law jury, nor of any of its essential incidents. The mode and manner of selecting the jury has always been a subject of statutory regulation; and so long as the mode adopted requires good and lawful men of the vicinage of defendant, to be taken from the body of the county, the respondent has no cause for complaint on constitutional grounds; and this is secured by the statute complained of. The challenge was properly overruled.

The second assignment of error is that the court refused

to let the defendant make an unsworn statement to the jury. This action of the court was objectionable, and subject to the exception taken; but the error was waived when afterward the defendant was sworn and examined on his own behalf, and cross-examined by counsel for the People.

Under the third assignment of error the respondent's counsel claim that the suspension of sentence was so long that the court lost jurisdiction to make the sentence he did. Under our practice courts may, for good cause, suspend sentence a reasonable length of time after trial and conviction. *Weaver v. People* 33 Mich. 297. We find nothing in the record showing an abuse of the discretion vested in the judge.

The conviction must be affirmed.

CHAMPLIN, J. I cannot wholly agree with the views expressed by my brother Sherwood in this case. I do not think it is competent for a circuit judge or other judicial officer to suspend indefinitely the sentence which the law makes it his duty to impose upon a person duly convicted, or who may plead guilty in his court. The effect of suspending sentence operates as a quasi pardon. It relieves the offender for the time being from the punishment which the law has prescribed shall be inflicted. The pardoning power under our Constitution is reposed in the Governor, and not in the judges. It is for the Governor to say whether the criminal shall be relieved from the infliction of the penalty due to his crime. The Constitution having vested this power in the Governor, it cannot be exercised by the circuit judges indirectly by letting the prisoner to bail on recognizance to appear when required to receive sentence. A stay of sentence may be granted where a certiorari is sued out, or where a writ of error is obtained for the purpose of review by the higher courts. Temporary stay may also be granted where steps are taken for a new trial; but all these are steps in the progress of the case, taken for the purpose of bringing about a change in the result.

In this case, Reilly was convicted October 22, 1881. He moved for a new trial, which was denied February 14, 1882. He took no steps to obtain a review by the Supreme Court;

but on February 10, 1882, he gave his personal recognizance in the penal sum of $500 to appear in court on the 14th day of February, 1882, and from day to day, and from term to term, then and there to receive the sentence of the court. On October 30, 1882, the prosecuting attorney moved for judgment, and the court continued the same for consideration until the next term, and on November 28, 1882, sentenced Reilly to be imprisoned at Jackson at hard labor for four years. It thus appears that over a year elapsed after Reilly was convicted of the crime of larceny from the person, before he was sentenced. During a large portion of the time he had been suffered to go at large upon his own recognizance. If the judge entertained serious doubts of his guilt, he should have recommended the Governor to pardon the respondent; and if he entertained no serious doubts of his guilt, he should have pronounced judgment instead of setting the criminal at large upon his own recognizance. If such power can be exercised by a judge, it incorporates into our administration of the criminal law the "ticket-of-leave" system of the English judicature without its surveillance and checks, and places the criminal at the caprice of the judge, subject to be called up for sentence at any time. If the judge can delay the sentence one year, I do not see why he may not fifteen years. An exercise of such power in this age would be no less revolting to our sense of justice than was the exercise of such power in the reign of James I., when he sent Sir Walter Raleigh to the block fifteen years after his conviction.

I agree with my brother Sherwood that there are no errors which call for a reversal of the judgment, and therefore concur in the conclusion reached by him.

COOLEY, C. J. concurred in the result.

CAMPBELL, J. I think the court lost all power to sentence the respondent by the discharge on his own recognizance for so long a period, and that the sentence cannot be sustained without practically overruling our previous holdings.